## James W. Ready *vs.* Dennis S. Munday.

### October Term, 1873.

PARTNERSHIP—SETTLEMENT—OPENING ACCOUNTS.—Upon a bill filed to open partnership accounts after a settlement by the parties, and note given for the balance as found, the burden of proof is upon the complainant, and the accounts will not be opened unless the proof clearly shows the existence of errors.

*John Reid*, for complainant.
*Thos. H. Malone*, for defendant.

THE CHANCELLOR :—The bill alleges that complainant and defendant formed a partnership in the suttler's business in

Nov. 1866, which was carried on until the 7th of May, 1867, "when it was dissolved by Munday's going out." The bill then gives certain details of the advances made by the partners of the firm, and to the firm business, and says: "Under these circumstances it was agreed (at the dissolution) that your orator should pay to said Munday $1,500, and if, after paying the debts of the concern, and selling the stock then on hand, and collecting the debts due to the firm, it should turn out that there were any profits, the said Munday was to receive the one-half thereof." This statement is in substance repeated in these words: "So your complainant agreed to pay Munday his $1,500, and also his share of the net profits if any there should prove to be. It was the understanding of your complainant, and he supposes it was so understood by defendant, that if the firm sunk money, each of the partners was to share his part thereof." The bill then adds: "Since the dissolution, the said Munday pretended to your complainant that he had ascertained from his clerks, or the books, or somehow, that he was entitled to a further sum of $529.79 as his portion of the profits, and induced your complainant to give his note for that sum to him, but with the understanding, which was reduced to writing, that the said note was to be null and void, if, upon examination of the books, it should be found he was not entitled to so much. This written agreement was put in the safe of Dolin & Barnes." * * "Since then complainant has ascertained that instead of the firm making a profit it sustained a loss, and that complainant instead of giving his note to Munday would be entitled to receive money from him." He states that he has paid the debts of the firm, and charges that his note was fraudulently obtained, asks for an injunction against its transfer, for a partnership account, &c.

The substance of the bill, it will be noticed, is that there was a dissolution of the firm on the 7th of May, 1867, the defendant retiring, and the complainant continuing the business, paying the defendant $1,500, paying the partnership debts, and giving the defendant the note in controversy,

which the proof shows was on the 28th of December, 1867, more than seven months after the dissolution. The statement of the bill is that this note was given to defendant for his share of the profits, the defendant claiming that this balance had been ascertained to be due him " from his clerks, or the books, or somehow." That complainant gave his note for this balance upon an agreement in writing that it was to be null and void, if, upon examination of the books, it should be found that defendant was not entitled to it, and complainant had since ascertained that instead of owing defendant, defendant owed him.

The answer admits the terms of dissolution substantially as alleged in the bill, or as may be fairly inferred from it, stating the facts somewhat more clearly. He states that the complainant was to pay him the amount of capital advanced by him, less the sums received by him from the firm ; that complainant was to take the partnership assets and pay the partnership debts ; and that he was to pay defendant " one-half of the profits which the books might show on the day of sale." Thus far, the bill and answer are substantially in accord, and there is no antagonism.

But the answer now states that a difficulty arising with regard to the amount which, under the terms agreed on, would be coming to respondent, he proposed to submit the books and papers of the firm to any two competent book-keepers, both of whom might be chosen by complainant. That this proposition was accepted and J. F. Asher and R. Murphy were selected by complainant, and that the referees did agree upon the sum " which was, under the contract, due from complainant to respondent." That the books were placed in the hands of the referees and are now in the hands of Asher.

The bill also states " that complainant and Munday agreed to refer the books to James F. Asher and Mr. Murphy, a clerk in the house of Dolin & Barnes, in order to have the account of the partnership taken, but the two cannot agree, and it becomes necessary to refer the matter to the court.

He further states that soon after he gave his said note * * Mr. Asher (in whose possession the books then were) returned to the city," and informed defendant that the books showed that no such balance was due him.

It will be seen that here again the bill and answer are in substantial accord as to the reference, the bill averring that the referees could not agree, while the answer insists that they did agree. The bill, too, implies that the reference was made after the note was given, while the answer plainly asserts that it was made before, and that the payment of $1,500 was made on the strength of their finding, and that complainant promised to pay the remainder on the next ensuing pay-day of the soldiers. That he failed so to do, and when pressed alleged that the referees had made an error in some charge against him. That he at length gave his note for the balance with the understanding, which was reduced to writing, "that if any error should be found and pointed out in sixty days it should be rectified." And the answer denies that there was any agreement that the note should be void in the event of error. It also denies positively that, under the terms of sale, respondent was to be responsible for any portion of the losses. He expresses his willingness to rectify any error that complainant may. show, and to allow complainant to surcharge and falsify the settlement if he can.

It is obvious, from these admissions of the parties that there was a sale at the time of the dissolution, on the 7th of May, 1867, of the partnership assets, and partnership business, to complainant, upon the terms of his paying defendant the amount of capital advanced by him, less the sums withdrawn, and to pay him in addition one-half the profits of the business, and that complainant did, under this agreement of sale, pay $1,500, and give the note now in controversy. I think it is also fairly inferable, from the pleadings, that the parties had agreed to refer the books to Asher and Murphy to ascertain the balance to which the defendant was entitled, and that the note was given after this reference, and after the books were in Asher's possession. That the note was

given upon the footing of an account then stated (the complainant insists by defendant alone, the defendant says by the referees), and that there was a written agreement in relation to it (the agreement, according to the complainant, being that the note was to be null and void if upon examination of the books it should be found that defendant was not entitled to so much ; while the agreement, according to the defendant, was that if any error should be found and pointed out in sixty days it should be rectified).

The complainant comes into court to be relieved from his own written contract upon allegations of a written agreement and fraudulent imposition. The burden of proof is upon him to prove such of his allegations as are denied by the answer, and the material allegations are denied. It is distinctly denied that defendant was to bear any portion of the loss in the partnership assets sold to complainant. It denies that the note was to be void upon the event suggested by the bill. And it denies that the referees failed to agree upon an award.

The complainant has given his own testimony, and taken the deposition of Dolin. The latter proves that when the note in controversy was executed, the defendant did give a writing to the effect that if Asher, who was then absent, should upon his return say that complainant did not owe defendant, the note was to be null and void ; that the writing was placed in the safe of Dolin & Barnes for safe keeping ; that Asher did, on his return, say that complainant did not owe defendant, but that when the writing was looked for it could not be found. This witness proves that the instrument in question was written by Murphy.

The complainant in his deposition adds nothing to his bill, but, on the contrary, seems to have forgotten most of the facts. He states, however, that defendant claimed the balance for which he gave his note upon an account made out by McLaughlin, who had been the clerk of the firm, and gave him a writing that if Asher came back in sixty days and said the account as made out by McLaughlin was not correct then the note was to be null and void.

The defendant has taken the depositions of Murphy and McLaughlin. The former proves that he drew up the note in controversy "for the parties," and knows "it to be a correct amount agreed upon between the parties *on settlement.*" That he also drew the agreement signed by defendant, which he appends to his deposition. That agreement is in these words : "If there should be any error in the note given for $527.30 *on settlement* with Jas. Ready, I bind myself to rectify the same within sixty days from date." The witness adds that he looked at the balance-sheet which was drawn up between the parties, showing their business from its commencement, and believes it to be a correct account.

McLaughlin proves that he was present when the note was given ; that the amount was fully agreed upon, and was the same shown by a balance taken from the books of which he was book-keeper ; that he made the statement from which this balance was taken and believes the same to be correct. He also proves that complainant had the books in his possession for six months before the settlement was made.

Upon the foregoing evidence, there cannot be a doubt that the complainant has wholly failed to sustain the allegations of his bill which are denied by the answer, and that the defendant has satisfactorily established the fact that there was a settlement between him and complainant, with the condition that the complainant might show errors within a limited period. It is not a case of stated account, but of actual settlement, and note given upon the footing of it. Whether the court would have confined the complainant to the limit of sixty days to point out errors, if he had shown any, we need not stop to enquire. For, the defendant in his answer voluntarily extended this time up to the closing of the proofs in the cause, and the complainant has wholly failed to show any errors. To extend the indulgence longer by reference, with leave to surcharge and falsify, would be a useless waste of time, and a useless expense. In this case, it may be said as the supreme court said in *Gray* v. *Washington*, Cooke 322, "the proof is before the court, and if it supports the

complainant's allegations, the court may give relief without referring the matter to the master; *and, indeed, unless the proof will justify a statement from the master on which they would relieve the party, the reference would only increase expense without a benefit to the parties.*" It is extremely dangerous, says our Supreme Court in another case, to open accounts after settlements made by the parties, and a bond given for the balance, and it will be allowed only when such circumstances are detailed as render it very probable that a mistake intervened. *Love* v. *White,* 4 Hay., 210. No such circumstances are shown in this case. On the contrary, the complainant, after years of litigation, has failed to establish the equity of his bill, or to point out a single error.

The bill must be dismissed with costs.

NOTE.—This decision was affirmed on appeal.